IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

MASSACHUSETTS MUTUAL LIFE INSURANCE
COMPANY,

    **Plaintiff,**

        v.

AYRAM AGUILA AVILES,

    **Defendant.**

CIVIL NO. 22-1060 (JAG)

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Plaintiff Massachusetts Mutual Life Insurance Company ("Plaintiff" or "MassMutual") brought this diversity suit against Ayram Aguila Aviles ("Defendant") requesting contract rescission and declaratory judgment. Docket No. 1. Defendant filed a Counterclaim requesting specific performance of the insurance contract between the Parties, declaratory judgment, and damages. Docket No. 6 at 17-33. Pending before the Court is Plaintiff's Motion for Summary Judgment, Docket No. 37; Defendant's Opposition, Docket No. 43; Plaintiff's Reply, Docket No. 45; and Defendant's Sur-Reply, Docket No. 49. For the reasons set forth below, the Court **DENIES** Plaintiff's Motion for Summary Judgment.

## STANDARD OF REVIEW

A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). A fact is disputed if it could be resolved in favor of either party, and

CIVIL NO. 22-1060 (JAG)                                                        2

material if it potentially affects the outcome of the case. *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986)).

   The movant bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party has properly supported [its] motion for summary judgment, the burden shifts to the nonmoving party." *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (quoting *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997)). The non-movant must demonstrate "through submissions of evidentiary quality [] that a trial worthy issue persists." *Iverson v. City of Bos.*, 452 F.3d 94, 98 (1st Cir. 2006) (citations omitted).

   In evaluating a motion for summary judgment, the Court views the entire record "in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Winslow v. Aroostook Cty.*, 736 F.3d 23, 29 (1st Cir. 2013) (quoting *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 53 (1st Cir. 2000)). The court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 134 (1st Cir. 2013) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)). The Court cannot make credibility determinations or weigh the evidence, as these are jury functions and not those of a judge. *See Anderson*, 477 U.S. at 255.

   Failure to timely oppose a motion for summary judgment does not, automatically, justify entry of summary judgment against that party; therefore, a court is "obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would legally be appropriate." *Kelly v. United States*, 924 F.2d 355, 358 (1st Cir. 1991) (citations omitted); *see De la Vega v. San Juan Star*, 377 F.3d 111, 115-16 (1st Cir. 2004). "[A] party that fails to oppose a

CIVIL NO. 22-1060 (JAG)                                                                                      3

motion for summary judgment does so at its own risk and peril." *Quiñones Rodríguez v. Andoxx Corp.*, 440 F. Supp. 2d 77, 78 (D.P.R. 2006); *see also Corrada Betances v. Sea-Land Service, Inc.*, 248 F.3d 40, 43 (1st Cir. 2001). As a result, the court may deem as uncontested all evidence and facts presented with the unopposed motion. *Nieto–Vincenty v. Valledor*, 22 F. Supp. 3d 153, 161 (D.P.R. 2014). However, "even an unopposed motion for summary judgment should not be granted unless the record discloses that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Rivera-Torres v. Rey-Hernandez*, 502 F.3d 7, 13 (1st Cir. 2007).

## FINDINGS OF FACT[1]

In November 2016, MassMutual issued a disability income insurance policy ("Policy") to Defendant. Docket Nos. 38, ¶ 1; 43-1, ¶ 1. The Policy contained the following provision: "Each premium after the first must be paid within 31 days after the due date to keep this Policy In Force. This is the Grace Period. The Policy will stay In Force during the Grace Period." Docket Nos. 38, ¶ 4; 38-3 at 19; 43-1, ¶ 4. After the grace period lapses, MassMutual provides an additional 30-day administrative period. Docket Nos. 38, ¶ 10; 43-1, ¶ 10. The Policy provides that, in case of reinstatement, MassMutual may require a reinstatement application and proof of insurability. Docket Nos. 38, ¶ 6; 43-1, ¶ 6. The Policy also states that "[a]fter two years from the date this Policy becomes Effective, only fraudulent misstatements in the application may be used to void this policy." Docket Nos. 38, ¶ 7; 38-3 at 21; 43-1, ¶ 7.

-----

[1] The Court has only credited facts properly supported by specific and accurate record citations in accordance with Local Civil Rule 56(e). Moreover, "[t]he court [has] no independent duty to search or consider any part of the record not specifically referenced in the [P]arties' separate statement of facts." Local Civil Rule 56(e); *see Carreras v. Sajo, Garcia & Partners*, 596 F.3d 25, 31 (1st Cir. 2010). Additional relevant facts shall be discussed throughout the analysis.

CIVIL NO. 22-1060 (JAG)                                                          4

As relevant here, Defendant's Policy premium was due on November 8, 2019, but MassMutual did not receive payment and thus Defendant's 31-day grace period began. Docket Nos. 38, ¶¶ 20-21; 43-1, ¶¶ 20-21. By December 9, 2019, MassMutual still had not received the payment, so Defendant had an additional 30 days during this administrative period to submit the payment. Docket Nos. 38, ¶¶ 30-31; 43-1, ¶¶ 30-31. By January 9, 2020, MassMutual still had not received payment. Docket Nos. 38, ¶ 35; 43-1, ¶ 35. By letter dated January 9, 2020, MassMutual informed Defendant that the Policy had lapsed but that she could seek reinstatement. Docket Nos. 38, ¶ 36; 43-1, ¶ 36. On February 5, 2020, Defendant submitted a Reinstatement Application to MassMutual. Docket Nos. 38, ¶ 38, 40; 43-1, ¶¶ 38, 40.

Question 4 of the Reinstatement Application asked "[w]ithin the past 5 years, has the Proposed Insured had consultation, surgery, or injury, other than the above, requiring treatment by a physician or other health care provider, hospital, or other treatment facility?" Docket Nos. 38, ¶ 42; 38-4 at 10; 43-1, ¶ 42.  Question 5 asked "[w]ithin the past 5 years, has the Proposed Insured had any electrocardiogram, x-ray, or other diagnostic test (excluding HIV test)." Docket Nos. 38, ¶ 44; 38-4 at 10; 43-1, ¶ 44. Defendant responded "No" to both questions. Docket Nos. 38, ¶¶ 43, 45; 43-1, ¶¶ 43, 45. To reinstate the Policy, MassMutual required payment of back premiums owed and Proof of Insurability. Docket Nos. 38, ¶ 48; 43-1, ¶ 48. The Policy defines Proof of Insurability as "[p]roof satisfactory to Us that We receive that the Insured is an acceptable risk, according to Our standard. It includes Proof of Good Health"; and it defines Proof of Good Health as "[p]roof satisfactory to Us that We receive that the Insured's health is acceptable according to Our standards." Docket Nos. 38, ¶¶ 49-50; 38-3 at 16; 43-1, ¶¶ 49-50. Defendant's Policy was reinstated on February 19, 2020. Docket No. 38, ¶ 51; 38-3 at 16; 38-4; 43-1, ¶ 51.

CIVIL NO. 22-1060 (JAG)                                                                    5

On February 4, 2021, MassMutual received notice of Defendant's claim for benefits under the reinstated Policy due to a diagnosis of Left Vestibular Schwannoma, a rare brain tumor. Docket Nos. 38, ¶ 57; 43 at 6, 20, 23; 43-1, ¶¶ 57, 80; 43-1 at 20; 43-2 at 34-37. As part of the claim, MassMutual engaged in a routine claim investigation in which it requested and reviewed Defendant's medical records for the 5 years prior to the Reinstatement Application. Docket Nos. 38, ¶¶ 61-62; 43-1, ¶¶ 61-62. According to the investigation, MassMutual concluded that Defendant's answers to questions 4 and 5 of the Reinstatement Application were misrepresentations because she did not disclose her visits to Dr. Hector J. Villarubia, an ophthalmologist, who performed several diagnostic tests and concluded that Defendant was a "glaucoma *suspect*" and "[r]einforced need for continued follow up in order to monitor for glaucomatous changes and treatment *if necessary*." Docket No. 38-4 at 49 (emphasis added); *see also* Docket Nos. 38, ¶¶ 72-74, 76-81; 38-4 at 68-69. MassMutual claims that it would not have reinstated the Policy as it was had Defendant disclosed the above-mentioned visits and tests. Docket Nos. 38, ¶¶ 74, 78; 38-4 at 68; 43-1, ¶¶ 74, 78. By letter dated December 28, 2021, MassMutual informed Defendant that it was rescinding the reinstated Policy based on Defendant's alleged material misrepresentations in the Restatement Application. Docket Nos. 38, ¶ 85; 43-1, ¶ 85.

CIVIL NO. 22-1060 (JAG)                                                                  6

## ANALYSIS[2]

### I.    Existence of Genuine Issues of Material Fact

Defendant argues that Plaintiff's Motion for Summary Judgment must be denied because "there is a genuine dispute of material fact as to whether the language is ambiguous and/or obscure, [and] the lack of nexus between the alleged omissions and the loss." Docket No. 43 at 23. However, contract interpretation is a question of law. *OfficeMax, Inc. v. Levesque*, 658 F.3d 94, 97 (1st Cir. 2011). Even if it were an issue of fact, the disputed language in the Policy would be immaterial because Defendant's alleged misrepresentations were unrelated to the loss sustained by Plaintiff and, thus, this issue does not impede summary judgment. And as to the lack of nexus between the omission and the loss, this only raises a question of law because Plaintiff only argues that it did not need to show a nexus between the alleged omission and claim. Docket No. 45 at 2, 4-7. Therefore, there are no material factual disputes that would preclude summary judgment in this case.

### II.    Misrepresentations in Reinstatement Application

Plaintiff claims it was entitled to rescind Defendant's reinstated disability Policy because Defendant's responses "on the Reinstatement Application were material to MassMutual's decision to reinstate the Policy *as it was* without any additional exclusions or riders." Docket No.

---

[2] As a threshold matter, Plaintiff argues that Defendant should be deemed to have waived any objection to MassMutual's Motion for Summary Judgment and Statement of Undisputed Facts because Defendant's request for an extension of time to oppose the motion was untimely. Docket No. 45 at 3 (cleaned up). However, "Federal Rule of Civil Procedure 6(b) confers discretion on a court to grant an extension of time after the expiration of a filing deadline for excusable neglect." *Cordero-Soto v. Island Fin., Inc.*, 418 F.3d 114, 117 (1st Cir. 2005) (cleaned up). Here, the Court granted Defendant's motions for extension of time as allowed by the Federal Rules of Civil Procedure. *See* Docket Nos. 40; 42. In any case, "a court still has the obligation to test the undisputed facts in the crucible of the applicable law in order to ascertain whether judgment is warranted." *Velez v. Awning Windows, Inc.*, 375 F.3d 35, 42 (1st Cir. 2004).

CIVIL NO. 22-1060 (JAG)                                                                     7

37 at 7 (emphasis added). Without citing any binding authority, Plaintiff argues that Article 11.100

of the Puerto Rico Insurance Code is inapplicable because Article 16.350 is a more specific statute

and, "when faced with a conflict between provisions in a specific statute and the terms of a general

law, the provisions of the specific statute will prevail." Docket No. 45 at 5-6 (quoting *Basic*

*Controlex Corp., Inc. v. Klockner Moeller Corp.*, 202 F.3d 450, 453 (1st Cir. 2000) (cleaned up)); *see also*

P.R. LAWS ANN. tit. 26, §§ 1110, 1635. The Court disagrees.

> Article 11.100—"Representations in Applications"—provides:

>> All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of acts, and incorrect statements shall not prevent a recovery under the policy unless: (1) Fraudulent; or (2) material either to the acceptance of the risk, or to the hazard assumed by the insurer, or (3) the insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise. When the applicant incurs in any of the actions enumerated in subsections (1), (2) and (3) of this section, the recovery shall only be prevented if such actions or omissions contributed to the loss that gave rise to the action.

P.R. LAWS ANN. tit. 26, § 1110. Article 16.350—"Incontestability After Reinstatement"—states:

>> The reinstatement of any policy of noncancellable disability insurance, or of any disability policy containing a provision for incontestability, or a provision of similar nature, delivered or issued for delivery in Puerto Rico while this Code is in effect, shall be contestable only on account of fraud or misrepresentation of facts material to the reinstatement and only for the same period following reinstatement as is provided in the policy with respect to the contestability thereof after the original issuance of the policy.

P.R. LAWS ANN. tit. 26, § 1635. Plaintiff alleges that Article 16.350 is the only applicable statutory

provision because it is the more specific statute and the controversy relates to "misrepresentations

CIVIL NO. 22-1060 (JAG)                                                                     8

made in a *reinstatement application*." Docket No. 45 at 2. Nevertheless, Article 11.100 is not a general statute that is less specific than Article 16.350. Both are provisions of the Puerto Rico Insurance Code, not separate statutes, and therefore Plaintiff's argument fails.

Plaintiff's interpretation is untenable since it would bypass the clear language in Article 11.100, which applies to "[*a*]*ll* statements and descriptions in *any* application." P.R. LAWS ANN. tit. 26, § 1110 (emphasis added). And nowhere in Plaintiff's motion does it explain how Article 11.100 and Article 16.350 are in conflict.[3] Article 16.350 merely addresses the contestability of a reinstated policy and does not conflict with the language in Article 11.100. "[W]e must study the statute as a whole when construing its provisions and not as separate sections. For this reason, we are bound to harmonize, insofar as it is possible, all the provisions of the law in the interest of obtaining the soundest, most logical, and reasonable outcome." *Eng'g Servs. Int'l, Inc. v. P.R. Elec. Power Auth.*, 105 P.R. Offic. Trans. 5 (2020) (citation omitted). To adequately construe the Insurance Code's provisions, we must consider Article 11.100, Article 16.060,[4] and Article 16.350. Article 11.100 sets the general

---

[3] "Statutory enactments should, moreover, be read so as to give effect, if possible, to every clause and word of a statute. And [t]he 'whole act' rule of statutory construction exhorts us to read a section of a statute not in isolation from the context of the whole Act but to look to the provisions of the whole law, and to its object and policy." *United States v. DiCristina*, 726 F.3d 92, 96 (2d Cir. 2013).

[4] Article 16.060, Time Limit on Certain Defenses:

> The policy shall contain a provision as follows: Time limit on certain defenses:—
> (a) After three (3) years from the date of [issuance] of this policy no misstatements (except fraudulent misstatements) made by the applicant in the application for such policy may be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such three (3)-year period. Fraudulent misstatements may be used to void the policy or to deny a claim for loss incurred or disability (as defined in the policy) commencing after the expiration of such three (3)-year period, only when the act or omission in question has contributed to the loss which is the object of the cause of action.

CIVIL NO. 22-1060 (JAG)                                                                                      9

rule for all representations made in any insurance application and establishes those scenarios in

which misrepresentations may be used as a defense to prevent recovery. *Id.* § 1110. Article 16.060

regulates the applicability of Article 11.100 to disability policies, sets a time limit[5] to raise the

defenses specified in Article 11.100, and establishes an incontestable period where recovery may

only be prevented if there are fraudulent misstatements that contribute to a loss. *Id.* § 1606. Lastly,

Article 16.350 regulates the incontestability clause of a reinstated disability policy, makes the

contestable period of a reinstated policy the same period as the one established in the original

---

(The foregoing policy provision shall not be so construed as to affect any legal requirement for voidance of a policy or denial of a claim during such initial three (3)-year period or to limit the application of §§ 1618–1622 of this title in the event of misstatement with respect to age or occupation, or other insurance.)

A policy which the insured has the right to continue in force subject to its terms by the timely payment of premium:

(1) Until at least age 50, or

(2) in the case of a policy issued after age forty-four (44), for at least five (5) years from its date of issue, may contain in lieu of the foregoing, the following provision (from which the clause in parenthesis may be omitted at the insurer's option) under the caption "INCONTESTABLE: After this policy has been in force for a period of three (3) years during the lifetime of the insured (excluding any period during which the insured is disabled), it shall become incontestable as to the statements contained in the application.")

(b) No claim for loss incurred or disability (as defined in the policy) commencing after three years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

P.R. LAWS ANN. tit. 26, § 1606.

[5] The time frame before the time limit has lapsed is referred to as the contestable period and the time frame after the time limit has lapsed is referred to as the incontestable period. P.R. LAWS ANN. tit. 26, §§ 1100, 1635. During the contestable period of an original policy, all defenses in Article 11.100 can be raised; however, after the contestable period has lapsed and the incontestable period starts to run, the only defenses available are those in Article 16.060. Article 11.100 and 16.060 both state that if the requirements for the defenses stated therein are satisfied, the claim may only be denied when "the act or omission in question has contributed to the loss which is the object of the cause of action." *Id.* §§ 1110, 1606, 1635.

CIVIL NO. 22-1060 (JAG)                                                                 10

policy, and limits the application of the contestability defenses in Article 11.100(1-2) for a reinstatement application. *Id.* § 1635.

In other words, the purpose of Article 16.350 is to prohibit an insurer from (1) raising the contestability defenses in Article 11.100 as to representations made in the original application after a policy has been reinstated, (2) raising the contestability defenses in Article 11.100(3) as to the reinstatement application, and (3) changing the contestable period established in the original policy. Article 16.350 aims to determine whether the reinstated Policy is within the contestable or incontestable period. If it is determined that the reinstated Policy is within the contestable period, then the Article 11.100(1-2) defenses may be raised only as to the representations made in the reinstatement application. If it is determined that the Policy is within the incontestable period, then only the defenses in Article 16.060 would be available. Therefore, Plaintiff's argument that the Court should solely rely on Article 16.350 is unfounded.

The Court's interpretation is supported by Article 11.100's text, which applies to "[*a*]*ll* statements and descriptions in *any* application" and makes no distinction between representations made in an original application and representations made in a reinstatement application.[6] P.R. LAWS ANN. tit. 26, § 1110 (emphasis added). Moreover, the fact that Article 16.350 provides no guidance as to how to interpret statements made in an application or reinstatement and what circumstances prevent recovery supports the conclusion that Article 16.350 should be read in conjunction with Article 11.100.[7]

_____

[6] Notably, MassMutual's own internal documents refer to the Reinstatement Application as an "Application and/or the Amendment to Pending Application." Docket No. 38-4 at 66.

[7] Further, in the absence of an express directive, the Court sees no reason to find that the Insurance Code provides less protections to the insured because the representations were made in a reinstatement application instead of an original application. To the contrary, the Insurance Code seems to expand the

CIVIL NO. 22-1060 (JAG)                                                                 11

Following Article 16.350's instruction, Defendant's reinstated Policy had a contestable period of 2 years, which is the same contestable period stated in the original Policy. Docket No. 38-3 at 21. Defendant's Policy was reinstated on February 19, 2020, and rescinded on December 28, 2021. Docket Nos. 38, ¶¶ 51, 85; 43-1, ¶¶ 51, 85. Thus, Plaintiff contested Defendant's misrepresentation during the reinstated Policy's contestable period. *Id.* As a result, Plaintiff may only contest representations made in Plaintiff's Reinstatement Application if they constitute fraud or misrepresentation of facts material to the reinstatement. P.R. LAWS ANN. tit. 26, §§ 1110, 1650.

To prevent recovery under a reinstated Policy during the contestable period due to misrepresentations, Plaintiff must show that (1) the misrepresentations were made in the Reinstatement Application, (2) the misrepresentations were material to reinstate the Policy, and (3) such misrepresentations contributed to the loss that gave rise to the action. P.R. LAWS ANN. tit. 26, §§ 1110, 1635. Plaintiff claims that Defendant did not disclose her "true medical history" in the Reinstatement Application for two reasons: (1) she did not disclose that she "received treatment from Dr. Villarubia"; and (2) she did not disclose that she "had diagnostic testing." Docket Nos. 38, ¶¶ 72-74; 38-4 at 68.

First, the Court finds that Defendant's answer to question 4 of the Reinstatement Application was not a misrepresentation. Question 4 required Defendant to disclose if "[w]ithin the past 5 years, [she] had consultation, surgery, or injury, other than the above, requiring treatment by a physician or other health care provider, hospital, or other treatment facility?"

---

protections available to the insured for representations made in reinstatement applications by excluding the defense contained in Article 11.100(3).

CIVIL NO. 22-1060 (JAG)                                                         12

Docket Nos. 38, ¶ 42; 38-4 at 10; 43-1, ¶ 42. The evidence on record clearly shows that Defendant did not have a consultation regarding a potential glaucoma diagnosis that *required treatment*. Defendant's ophthalmologist Dr. Hector J. Villarubia performed several diagnostic tests and concluded that Defendant was a "glaucoma *suspect*" and "[r]einforced need for continued follow up in order *to monitor* for glaucomatous changes and treatment *if necessary*." Docket No. 38-4 at 49 (emphasis added). Defendant, thus, did not receive treatment for glaucoma. Her doctor was monitoring Defendant to determine whether treatment would be necessary in the future. Therefore, the Court rejects Plaintiff's claim that Defendant's answer to question 4 was a misrepresentation.

As to Defendant's alleged misrepresentation in her answer to question 5 of the Reinstatement Application, MassMutual has failed to show how this alleged misrepresentation was material to the reinstatement or contributed to the loss suffered.

### A. Materiality of Misrepresentations

"The definition of materiality in insurance contracts has been a frequently debated issue." *Markel Am. Ins. Co. v. Leonor Veras*, 995 F. Supp. 2d 65, 74 (D.P.R. 2014). The First Circuit has stated:

> With respect to the materiality of a misrepresentation in an insurance application, a material fact, measured by an objective standard, is one which would naturally influence the judgment of an underwriter in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of the premium.

*Fed Ins. Co. v. HPSC, Inc.*, 480 F.3d 26, 34 (1st Cir. 2007) (cleaned up). "[T]he materiality of a misrepresentation depends on what a reasonable underwriter would have done differently had she known the truth behind the misrepresentation." *Id.*

Plaintiff claims that "Defendant's responses to the Reinstatement Application's questions about her medical and personal history were material to MassMutual's review and consideration of the Reinstatement Application because MassMutual relied on those responses to determine Ms. Aviles's insurability for potential reinstatement." Docket Nos. 37 at 7; 38-4 at 69. Notwithstanding, Plaintiff repeatedly states that Defendant's responses were material to reinstate the Policy "as it was." Docket Nos. 37 at 7, 10, 13, 18, 19; 38-4 at 68-69. That is, had Defendant provided the missing information, MassMutual would have still issued the reinstated Policy but would have included a glaucoma rider. Docket No. 38-4 at 3, 69. Thus, Plaintiff concedes that the Policy itself would have been issued regardless of Defendant's omission. Docket Nos. 37 at 7, 10, 11, 13, 18, 19; 38-4 at 69. Therefore, Defendant's omissions in the Reinstatement Application were material to the issuance of a glaucoma rider, but not material to the reinstatement of the Policy as a whole since, per Plaintiff's own allegations, the Policy would have been reinstated regardless. *See id.*

### B. Misrepresentations Contributing to Loss

Article 11.100 provides *inter alia* that "[m]isrepresentations, omissions, concealment of acts, and incorrect statements shall not prevent a recovery under the policy" except in certain enumerated circumstances and only "if such actions or omissions contributed to the loss that gave rise to the action." P.R. LAWS ANN. tit. 26, § 1110. The purpose of the "contributed to the loss" clause in Article 11.100 is

> to prevent the interpretation that a false statement about a matter relevant to the acceptance of the risk may void a policy in cases where the false or concealed fact is in no way related to the loss sustained. Goble offers the following example. If an applicant for a life insurance policy with coverage for accidental death falsely states that he does not suffer from any kidney disorder, which is important to evaluate the risk, and is then killed by a car, the

> falsehood of his statement must not preclude collection of the policy. Thus, we can see that the purpose of the last paragraph is to broaden the concept of relevance. The policy is void when the false statement or the omitted information is relevant not only to the evaluation of the risk but also to its occurrence. The contribute-to-the-loss clause requires a nexus—whose nature may necessarily vary, depending on the type of insurance—between an inaccurate statement and the loss object of the action.

*Serrano Ramirez v. Clinica Perea, Inc.*, 108 P.R. Offic. Trans. 477 (1979).

Thus, even if Plaintiff had shown that Defendant's misrepresentations were material to the issuance of the reinstated Policy, Plaintiff still failed to show how the misrepresentations are relevant to the loss incurred, if any. *See* Docket Nos. 1; 37. Not only is the Complaint devoid of any allegation that MassMutual incurred a loss as a result of Defendant's alleged misrepresentations, but any loss incurred would be completely unrelated to the omission made in the Reinstatement Application regarding the glaucoma testing. *See* Docket Nos. 37; 43 at 6, 23. Defendant's claim for benefits under the reinstated Policy related to her diagnosis of Left Vestibular Schwannoma, a rare brain tumor, which has no relation to Defendant's omissions relating to her glaucoma testing. Docket Nos. 37; 38; 43 at 6. Accordingly, Plaintiff did not rescind the Policy according to law. Thus, the Court denies Plaintiff's Summary Judgment and **DISMISSES WITH PREJUDICE** Plaintiff's claims.

## CONCLUSION

For the aforementioned reasons, the Court hereby **DENIES** Plaintiff's Motion for Summary Judgment. Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiff's claims. Consequently, the Court **GRANTS IN PART** Defendant's Counterclaim and holds that Defendant's Policy was properly renewed, the Policy is in force, and Plaintiff must comply with the terms of the Policy. The Court hereby refers the remaining counterclaims, relating to damages,

**CIVIL NO.** 22-1060 (JAG)                                                                                15

to a U.S. Magistrate Judge for a Mediation Conference. Partial Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Friday, July 18, 2025.


<u>s/ Jay A. Garcia-Gregory</u>
JAY A. GARCIA-GREGORY
United States District Judge